INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitral Tribunal

SHENZHENSHI JINFANQI TRADING CO., LTD.,

Claimant,

v.

ICDR Case No. 01-24-0008-1325

AMAZON.COM SERVICES LLC, and AMAZON.COM, INC.,

Respondents.

**FINAL AWARD**

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement set forth in the Amazon Services Business Solutions Agreement, effective April 11, 2020, entered into between the above names Parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby AWARD as follows:

## I. THE PARTIES

Claimant Shenzhenshi Jinfanqi Trading Co., Ltd. ("SJT"), is a limited liability company organized under the laws of The Peoples Republic of China and was in the business of selling consumer products on-line. Claimant was represented in the proceeding by Julie Guo, Esq. JS Law, 200 E. 36th Street New York, NY.

Respondent Amazon.com. Services, LLC ("Amazon Services") is a Delaware limited liability company with its principal place of business in Seattle, Washington. In its Answer to Claimant's Demand for Arbitration, Amazon Services stated that the entity with which Claimant contracted under the Business Solutions Agreement at issue in this

arbitration was Amazon Services, not the second named Respondent Amazon.Com, Inc. ("Amazon Inc."). In the Final Award, Amazon Services and Amazon Inc. will be referred to collectively as "Amazon."[1] Amazon was represented in this proceeding by Macaulay Ivory, Esq., Davis Wright Tremaine LLP, 920 Fifth Avenue, Suite 3300, Seatle, Washington.

## II. THE ARBITRATION AGREEMENT AND GOVERNING LAW

Amazon, in addition to selling its own inventory of products to consumers, allows third parties to sell their products on the Amazon.com online store. All third-party sellers seeking to sell products on the Amazon online store must accept the terms and conditions of the Amazon Services Business Solutions Agreement (the "BSA"). *See* Declaration of Michael Coyle, dated August 13, 2025 ("Coyle Decl.") at ¶¶3-5.

The terms of the BSA are amended from time to time. In this proceeding, there was a dispute between the Parties as to which version of the BSA governs this arbitration. In Procedural Order No. 3, the Tribunal ruled that the version of the BSA that governs this arbitration is the BSA that was in effect as of November 22, 2022. A copy of the BSA in effect as of November 22, 2022, was introduced at the hearing as Exhibit R-1. All references in this Final Award to the BSA are a reference to the BSA in effect as of November 22, 2022.

The BSA contains an arbitration clause which provides, in relevant part, as follows:

> Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court . . . . The arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules.

[1] The Arbitrator notes that Amazon never made a motion to dismiss Amazon Inc. for lack of jurisdiction.

BSA at ¶18. The BSA further provides that the laws of the State of Washington, together with the Federal Arbitration Act, will govern this arbitration. *Id.*

**III. THE PROCEDURAL HISTORY OF THE ARBITRATON**

Claimant filed its Demand for Arbitration, dated October 9, 2024. Respondents filed Amazon's Answer to Claimant's Demand for Arbitration and Amazon's Counterclaims, dated November 5, 2024 ("Amazon's Counterclaims"). Claimant filed its Answer to Amazon's Counterclaims, dated November 18, 2024.

A preliminary hearing was held in this matter on April 24, 2025. In Procedural Order No. 1, dated April 25, 2025, the Tribunal noted that there was a dispute between the Parties as to whether this matter was to be resolved by written submission (requested by SJT) or after an evidentiary hearing (requested by Amazon). This issue, in turn, required a determination of the disagreement between the Parties as to which version of the BSA governs this arbitration. At the preliminary hearing, Claimant also requested permission to file a dispositive motion pursuant to Rule 34 of the AAA Commercial Rules regarding the enforceability of Section 2 of the BSA. The Parties were requested to agree upon a briefing schedule to address these two issues. In Procedural Order No. 1, the Tribunal also granted the Parties' joint request for permission to serve 10 requests for documents and 10 interrogatories.

In Procedural Order No. 2, dated May 9, 2025, the Tribunal confirmed the briefing schedule agreed by the Parties. Claimant filed its opening submission on May 16, 2024, Respondent filed their response on May 30, 2025, and Claimant filed its reply on June 6, 2025.

In Procedural Order No. 3, dated July 6, 2025, the Tribunal ruled that the BSA governing this arbitration was the BSA in effect as of November 22, 2022. The Tribunal further determined that Amazon under the terms of that BSA was entitled to have this arbitration resolved by an evidentiary hearing.

The Tribunal further ruled on Claimant's motion for a declaration as to whether Section 2 of the BSA, the provision upon which Amazon relied in order to support its seizure of all of the funds in Claimant's seller accounts, was an enforceable liquidated damages clause. The Tribunal ruled that the relevant provisions of Section 2 of the BSA challenged by the Claimant were not enforceable because they did not constitute a valid liquidated damages clause. However, the Tribunal granted Amazon permission, if it wished to do so, to introduce evidence at the hearing on the merits to further support its argument that Section 2 is a valid liquidated damages clause, and that the Tribunal will take that additional evidence into consideration, and, if appropriate, reconsider its determination that Section 2 is not a valid liquidated damages clause.

In Procedural Order No. 4, dated July 19, 2025, the Tribunal issued a schedule for the completion of the arbitration.

In Procedural Order No. 5, dated August 18, 2025, the Tribunal issued an order setting forth the procedural structure for the hearing on the merits.

In Procedural Order No. 6, dated September 28, 2025, the Tribunal sent the Parties an agenda and list of issues to be addressed at the final pre-hearing conference. The final pre-hearing conference was held on September 30, 2025.

The hearing on the merits was held by video conference on October 3, 2025. At the hearing, testimony was heard from Xuerong Liu, Chief Executive Office of SJT, and from

Michael Coyle, Risk Manager at Amazon, each of whom had submitted a written declaration as part of the pre-hearing submissions. There were 110 exhibits admitted into evidence. As agreed by the Parties, there is a video recording of the hearing, but no written transcript.

In Procedural Order No. 7, dated October 3, 2025, the Tribunal issued an order setting forth the schedule for post-hearing submissions. The Parties each submitted post-hearing briefs on October 20, 2025, including declarations in support of each of the Parties' requests for the award of arbitration costs, including attorney's fees.

## IV. THE CLAIMS AT ISSUE

SJT was an authorized third-party seller on Amazon's online store. On April 11, 2020, SJT registered a seller account on Amazon.com to sell products to customers in North America and was assigned North American Merchant ID number A210B7R71K21VY. SJT later also opened a seller account to sell products in the United Kingdom. On May 2, 2020, SJT registered as a third-party seller to sell products in the United Kingdom and was assigned EU Merchant ID A9FKTSZNOIKT8. *See* Coyle Decl. at ¶ 2, 22; Exhibits R-14; R-16. SJT was a seller of beauty products, with its primary products being eyebrow pencils. *See* Declaration of Xuerong Liu, dated August 13, 2025 ("Liu Decl.") at ¶8.

SJT also participated in Amazon's Fulfillment by Amazon ("FBA") program. The FBA program allows third-party sellers to have their products stored in Amazon warehouses and have Amazon ship the products directly to the consumer. *See* Coyle Decl. at ¶13. Exhibit R-5. The FBA program also includes an optional liquidation program pursuant to which third party sellers may request that Amazon finds a buyer for unwanted inventory (the "FBA Liquidation program"). This program allows sellers to recover a portion of the value of unwanted inventory, while avoiding the costs of paying to have these unwanted

products either disposed of or returned to the seller. Amazon uses a formula to determine the amount to be paid to the seller, which is based in substantial part on the product's listed selling price. *Id.* Liquidators will purchase these products for amounts generally in the range of about 5% to 10% of the product's value. Amazon then deducts certain fees and pays the seller the net recovery value. *See* Exhibit R-5.

Claimant sold products on Amazon for about three years. On September 6, 2023, Amazon terminated Claimant's account because it alleged that an Amazon investigation had concluded that Claimant had committed fraud by abusing Amazon's FBA liquidation program. Amazon, pursuant to certain rights it claims to have under Section 2 of the BSA, then froze all the funds then present in Claimant's seller accounts in the total amount of US$163,323.33

Claimant asserts the following claims against Amazon.

First, SJT claims that Amazon breached the BSA, including breach of the implied covenant of good faith and fair dealing, when it terminated SJT's seller accounts without providing any advance notice. SJT further alleges that Amazon's seizure of the US$163,323 present in its seller accounts at the time of termination was improper because Section 2 of the BSA is an invalid liquidation clause. SJT also alleges that Sections 2 and 3 of the BSA are void because they are procedurally and substantively unconscionable. SJT seeks an award ordering Amazon to release and return the seized funds and also seeks damages for the injury caused to SJT's business. *See* Demand for Arbitration, at ¶¶17-38.

Second, SJT asserts a claim against Amazon for conversion based on Amazon's allegedly improper seizure of the funds and its refusal to return the funds. *See* Demand for Arbitration, at ¶¶39-42.

Third, SJT asserts a claim for violation of bailment. SJT alleges that the proceeds from SJT's online sales were delivered to Amazon as a bailee, and that Amazon, as bailee, improperly refused return said property. *See* Demand for Arbitration, at ¶¶43-46.

Fourth, SJT asserts a claim for unjust enrichment. SJT alleges that Amazon has been unjustly enriched by its seizure and retention of the funds in SJT's seller accounts. *See* Demand for Arbitration, at ¶¶47-51.

Fifth, SJT asserts a claim for violation of the Washington Consumer Protection Act (the "WCPA"). SJT alleges that Amazon's actions in terminating SJT's seller accounts without advance notice and its seizure of the funds violated the WCPA.

Finally, SJT seeks reimbursement of its arbitration costs, including its attorney's fees.

Amazon denies all the claims for relief asserted by SJT and asserts three counterclaims.

First, Amazon asserts a claim against SJT for breach of contract alleging that SJT committed fraud in connection with SJT's submission of products for sale under the FBA Liquidation program. *See* Amazon's Counterclaims at ¶¶24-28.

Second, Amazon asserts a claim against SJT for breach of the WCPA alleging that Claimant has engaged in unfair and deceptive acts occurring in trade or commerce. *See* Amazon's Counterclaims at ¶¶30-43.

Third, Amazon asserts a claim against SJT for intentional interference with economic relations. Amazon alleges that Amazon has contracts with each of its third-party sellers and with each customer who purchases produces from its online store and that SJT

has interfered with Amazon's relationship with these sellers and customers. *See* Amazon's Counterclaims at ¶¶35-40.

Finally, Amazon requests recovery for all its arbitration costs, including attorney's fees.

## V. THE TRIBUNAL'S ANALYSIS OF THE CLAIMS AT ISSSUE

### A. The Challenge to the Tribunal's Jurisdiction Relating to Sales Made in the United Kingdom

The first issue is whether this Tribunal has jurisdiction over SJT's claims as they relate to its third-party seller account EU Merchant ID A9FKTSZNOIKT, pursuant to which SJT sold products in the United Kingdom. As previously noted, SJT asserts that Amazon wrongfully terminated its seller accounts and wrongfully seized the funds present in such accounts. SJT alleges that the total amount of funds seized is US$163,323.33, of which $143,206.41 was present in its North American account and US$20,116.92 present in the EU account. *See* Claimant's Closing Brief, dated October 20, 2025 ("Claimants Closing Br."). at pp 3-4.

Amazon contends that this Tribunal lacks jurisdiction under the BSA's arbitration clause to hear any claims with respect to the EU account. *See* Amazon's Arbitration Brief, dated August 13, 2025 ("Amazon Arbitration Br."), at p. 13.

The Tribunal hereby rules that Amazon is correct and that this Tribunal does not have any jurisdiction to hear claims relating to the EU account. The Tribunal finds that the BSA's arbitration clause is expressly limited to disputes between the Parties related to sales made in the United States, Canada, or Mexico. The BSA states that the BSA is an agreement made between Amazon and the seller for services for "each country for which you register or elect to use a service (in each case, the "**Elected Country**") (emphasis in

original). *See* BSA at p. 1. The BSA then goes on to provide that "[i]f the Elected Country is the United States, Canada, or Mexico, Amazon and you both consent that any dispute with Amazon or is Affilaites or claims relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph." BSA, at Section 18.

SJT registered two seller accounts with Amazon. On April 11, 2020, SJT registered a seller account on Amazon.com to sell products to customers in North America and was assigned North American Merchant ID number A210B7R71K21VY. On May 2, 2020, SJT separately registered as a third-party seller to sell products in the United Kingdom and was assigned EU Merchant ID A9FKTSZNOIKT8. *See* Coyle Decl. at ¶ 2, 22; Exhibits R-14; R-16.

Review of the arbitration clause in the BSA shows that the requirement to submit all disputes to binding arbitration only applies to sales in the United States, Canada, or Mexico. The BSA defines the term "Elected Country" as each "country for which you register or elect to use a service." The BSA then provides that *only* "[i]f the Elected Country is the United States, Canada, or Mexico, [that] Amazon and you both consent that any dispute with Amazon or is Affiliates or claims relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph." BSA, at Section 18.

The Elected Country for SJT's seller account North American Merchant ID number A210B7R71K21VY is the United States. Accordingly, the arbitration clause applies to SJT's North American seller account and requires that all claims between the Parties related to such seller account be resolved by binding arbitration. However, the Elected Country for

SJT's seller account EU Merchant ID A9FKTSZNOIKT8 is the United Kingdom. This means that the arbitration clause in the BSA by its plain terms does not apply to disputes between Amazon and SJT regarding sales made in the United Kingdom.

Indeed, the BSA further provides for different Amazon companies to be the contracting party for each Elected Country. If the Elected Country is the United States, the Amazon contracting party is Amazon.com Services LLC (*see* BSA at Section 18, Definitions)– which is one of the Respondents in this arbitration. However, for third-party sellers who register to sell products in Europe, including the United Kingdom, the contracting party is Amazon Services Europe S.A.R.L. and the governing contract is the Amazon Europe Business Solutions Agreement (the "EU-BSA"). *See* R-13. The EU-BSA does not contain an arbitration clause. To the contrary, the EU-BSA provides that any dispute relating to services under the EU-BSA "will be adjudicated in the courts of the district of Luxembourg City, Luxembourg, non-exclusively." *Id.* at Section 17.

Accordingly, the Tribunal concludes that it does not have jurisdiction with respect to any claim relating the SJT's EU Merchant seller ID A9FKTSZNOIKT8 or sales made in the United Kingdom.

**B. The Claim for Breach of Contract**

SJT's claim for breach of contract has two primary components. First, SJT claims that Amazon breached the BSA by terminating SJT's seller account for North America without advance notice. Second, SJT claims that Amazon's seizure of the funds in its seller account pursuant to Section 2 of the BSA was unlawful because Section 2 does not qualify as a valid and enforceable liquidated damages clause.

### 1. The Claim That Termination Without Notice Was a Breach of the BSA

On September 6, 2023, Amazon sent SJT notice that its account had been deactivated pursuant to Section 3 of the BSA because an Amazon investigation had determined that SJT had committed a fraud against Amazon. *See* Coyle Decl. at ¶26 & Exhibit R- 14. Section 3 of the BSA provides, in relevant part, as follows:

> The term of this Agreement will start on the date of your completed registration for use of a Service and continue until terminated by us or you as provided below. You may at any time terminate your account or this Agreement immediately on notice to us via Seller Central, email, the Contact Us form, or similar means. We may terminate your account or this Agreement for convenience with 30 days' advance notice. *We may suspend or terminate your account or this Agreement immediately if we determine* that (a) you have materially breached the Agreement and failed to cure within 7 days of a cure notice unless your breach exposes us to liability toward a third party, in which case we are entitled to reduce, or waive, the aforementioned cure period at our reasonable discretion; (b) *your account has been, or our controls identify that it may be used for deceptive or fraudulent, or illegal activity*; (c) your use of the Services has harmed, or our controls identify that it might harm, other sellers, customers, or Amazon's legitimate interests . . . . We will promptly notify you of any such termination or suspension via email or similar means including Seller Central, indicating the reason and any options to appeal, except where we have reason to believe that providing this information will hinder the investigation or prevention of deceptive, fraudulent, or illegal activity, or will enable you to circumvent our safeguards.

Exhibit R-1 (emphasis added).

What the evidence shows is as follows.

As previously noted, Amazon has an FBA Liquidation program that allows sellers the option of selling unwanted inventory to Amazon. SJT had listed for sale what it described as an ETEDES brand eyeliner at $44.99. SJT sent these products to Amazon pursuant to Amazon's FBA program which allows third-party sellers to have their products stored in Amazon warehouses and have Amazon ship the products directly to the consumer.

At a certain point, SJT told Amazon that this ETEDES product was not selling well and the SJT wanted to take advantage of Amazon's FBA Liquidation program. As a result, the full inventory of these eyeliner products was liquidated pursuant to the FBA Liquidation program, and Claimant received from Amazon US$128,530.24. *See* Coyle Decl. at ¶25.

At some point, Amazon conducted an investigation of these sales. What Amazon discovered was that the product which SJT had shipped to Amazon's warehouses, and therefore the product that SJT had later submitted for sale under the FBA Liquidation program, was not an ETEDES brand eyeliner, with a sale price of US$44.99. The products Claimant sent to Amazon's warehouses were a much lower cost eyeline product under the DNM brand, which retailed for roughly $5.99. *See* Coyle Decl. at ¶24 & Exhibit R-9.

As previously noted, the price a seller receives for products sold through the FBA Liquidation program is heavily influenced by the product's listed sale price. As a result, SJT received much more money from the liquidation sale of these products than it should have. In total, Amazon claims that "Claimant defrauded Amazon in the amount of US$128,530.24." *See* Coyle Decl. at ¶25.

The evidence shows that SJT has admitted the basic facts of this breach of the terms and conditions of the FBA Liquidation program. SJT, in trying to get its account reinstated, attempted to explain this situation as an inadvertent error. But this Tribunal finds that communications from SJT confirm the basic facts of the fraud. In a communication dated September 8, 2023, SJT asked Amazon to reinstate its account, offering the following explanation:

> [W]e had a thorough investigation of this issue in the account. We found that we once indeed made mistakes in the account. … we once uploaded the incorrect product detail page information which caused it not matched with the product itself … .

*See* Exhibit R-11. In a communication dated October 5, 2023, SJT stated:

> We are sorry that we once indeed sent the unsellable substitute to the FBA warehouse. … This shipment we sent to the FBA is the eyeliner products. But after our detailed investigation, we found that this shipment may be mixed with the black eyebrow pencil items. These two kinds of products are very similar, and they are all two black packs [packaged in items of two]. When this shipment … was packed our warehouse, it may be mixed with another kind of black eyebrow pencil by mistake. We didn't timely find it and the worker stuck the wrong label and sent the wrong products to the FBA warehouse.

*See* Exhibit R-11. In another communication, SJT admitted as follows:

> The brand of the product that we sent to Amazon warehouse is inconsistent with the brand of the PDP. We have mistakenly uploaded DNM brand products in the PDP but tagged as ETEDES brand. . . thus causing wrong branded products arriving at FBA warehouse.

*See* R-12. SJT further stated that "[s]ince these products were not selling well, and we wanted to sell some other products in more popular categories, we decided to participate in Amazon's liquidation program for these products" and we are "sorry that our behavior violated Amazon's Liquidations Program Terms and Conditions." *See* Exhibit R-12.

At the hearing, SJT did not submit any credible evidence rebutting Amazon's proof that SJT had defrauded Amazon. Indeed, based on SJT's submission in support of its claim for damages, it appears that SJT's total sales made during the regular course of its business for the 12 months before its account was terminated was only $78,660. *See* Claimant's Arbitration Brief, dated August 13, 2025 ("Claimant's Arbitration Br."), at 21. This stands in sharp contrast to the US$128,530.24 that Claimant was paid under the FBA liquidation program and further supports Amazon's claim that SJT used the FBA liquidation program in order to commit fraud.

The Tribunal finds that Amazon was well within its rights under the BSA to terminate SJT's seller account immediately, and without prior notice. *See* BSA, at Section 3 ("We may suspend or terminate your account or this Agreement immediately if we determine that . . . your account has been, or our controls identify that it may be used for deceptive or fraudulent, or illegal activity").

Claimant nevertheless argues that Amazon should not have had the right to terminate SJT's account without notice because Amazon failed to provide SJT with "due process" and its deactivation was "immediate and arbitrary, lacking prior notice, providing no evidence of alleged violations, or any charge for Claimant to rebut or cure." *See* Claimant's Closing Br. at 9. Claimant also asserts that Section 3 of the BSA is unenforceable because "Section 3 of the BSA is both substantively and procedurally unconscionable." *Id.* at 11.

The Tribunal has fully considered each of these arguments and finds them frivolous as a matter of fact and law. For example, Amazon provided SJT with a process to appeal the termination of its account; a process which SJT, in fact, did pursue. SJT also provided no legal support for its claim that a provision in a contract allowing a party to immediately terminate the contract in the case of fraud is unlawful or procedurally or substantively unconscionable.

The Tribunal also rejects SJT's arguments under the authority of *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F.Supp.3d 1166 (W.D. Wash. 2014), *aff'd* 691 Fed. Appx. 406 (9th Cir. 2017), where very similar claims were asserted. In that case, Amazon informed Hard 2 Find ("H2F") that it had removed its selling privileges, canceled its listings, and placed a temporary hold on any funds in its Amazon.com seller account because Amazon believed H2F had been selling counterfeit products. *See Hard 2 Find*, 58

F. Supp. 3d at 1169–70. H2F brought claims against Amazon for breach of contract, breach of covenants of good faith and fair dealing, violations of Washington's Consumer Protection Act, and unjust enrichment. *Id.* at 1170. The District Court dismissed each and every one of these claims as a matter of law. The Ninth Circuit affirmed. *See Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406, 408 (9th Cir. 2017) ("The district court properly dismissed H2F's breach of contract claims against Amazon.")

Accordingly, the Tribunal finds that Claimant has failed to prove its claim that Amazon breached the BSA when it terminated Claimant's account.

**2. The Claim That Section 2 of the BSA Is Unenforceable Because It Is Not A Valid Liquidated Damages Clause**

Claimant separately alleges that Amazon upon termination if its account improperly seized all of the funds in SJT's seller account and has refused to return them. This issue was addressed by the Tribunal in Procedural Order No. 3 in response to Claimant's motion for a declaration as to whether Section 2 of the BSA is an enforceable liquidated damages clause.

The Tribunal ruled that the relevant provisions of Section 2 of the BSA challenged by Claimant were not enforceable because they did not constitute a valid liquidated damages clause. However, the Tribunal granted Amazon permission, if it wished to do so, to introduce evidence at the hearing on the merits to further support its argument that Section 2 is a valid liquidated damages clause, and that the Tribunal will take that additional evidence into consideration, and, if appropriate, reconsider its determination the Section 2 is not a valid liquidated damages clause.

The Tribunal finds that Amazon did not introduce any evidence at the hearing sufficient to cause the Tribunal to reconsider its ruling in Procedural Order No. 3. The Tribunal thus reaffirms its ruling in Procedural Order No. 3 and incorporates Procedural

Order No. 3 as if fully set forth herein. Accordingly, the Tribunal finds that Claimant has sustained its burden of proving that Amazon breached the BSA when it seized the funds in Claimant's seller account.

The Tribunal now turns to what remedy should be awarded to Claimant for this breach. SJT seeks an Award ordering Amazon to return the US$143,206.41 it seized from the account and ordering Amazon to pay damages of US$39,330.04. *See* Claimant's Arbitration Br. at 12, 21, 25.[2] SJT arrives at this damages amount by arguing that it is entitled to damages equivalent to "90 days of Claimant's gross profit." *Id.* at 21.

First, while the Tribunal has found that Section 2 of the BSA is not a valid liquidated damages clause, and therefore it does not allow Amazon to seize and retain the funds, it does not necessarily follow that SJT is entitled to the return of the funds. *See* Procedural Order No. 3 at p. 19. Just because Amazon could not seize the funds as liquidated damages, does not mean that Amazon does not have any remedy for SJT's fraud. While Section 2 may not be enforceable as liquidated damage, Amazon may still pursue a claim to recover its actual damages. *See, e.g., Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1292 (7th Cir. 1985) ("The fact that the damage formula is invalid does not deprive Lake River of a remedy. [A]ll this means is that the victim of the breach is entitled to his common law damages. See, e.g., Restatement, Second, Contracts § 356, comment a (1981)"). A party "injured by a breach of contract may recover all damages that accrue naturally from the breach, including any incidental or consequential losses the breach caused." *Floor Express, Inc. v. Daly*,

[2] In Claimant's Closing Brief at page 11, SJT argues that it is entitled to damages in the amount of $305,395.70. The Tribunal assumes that this is an inadvertent error, perhaps because certain parts of its submission were copied from a brief in another case involving Amazon.

158 P.3d 619, 622 (Wash. App. 2007). Accordingly, Amazon is entitled to recover its actual damages.

Based on the evidence at the hearing, Amazon has sustained its burden of proving that SJT abused the FBA liquidation program by submitting for liquidation products it claimed were ETEDES brand eyeliner, which sold at a list price of US$44.99, but, in fact, delivered to Amazon's warehouses a DNM brand eyeliner that generally sold for about US$5.99. In short, the Tribunal finds that SJT defrauded Amazon in the amount of US$128,530.24. *See* Coyle Decl. at ¶25.

Amazon also provided evidence at the hearing that SJT owes Amazon for certain FBA related fees. The BSA expressly provides that a third-party seller remains responsible for paying Amazon the fees it charges from the storage and removal of inventory. *See* Exhibit R-1, § F-13. At the hearing, Mr. Coyle testified that SJT owes Amazon US$58,006.24 in unpaid FBA fees. The Tribunal finds that Amazon is entitled to be paid these fees.

The Tribunal therefore finds that SJT is not entitled to the return of any of the US$143,206.41 in seized funds. SJT received US$128,530.24 from Amazon as a result of its fraudulent abuse of the FBA Liquidation program. SJT also owes Amazon US$58,006.24 in unpaid FBA fees. These two items total US$186,536.48. Accordingly, Amazon is not required to remit any of the seized funds. Instead, it may retain the seized funds as partial compensation for its actual damages.[3]

[3] The Tribunal notes that Amazon's total damages are about $43,330 above the amount it seized from SJT's seller account. At the hearing, the Tribunal asked Amazon if it was seeking an award of damages above the amount that it had seized from SJT's seller account. Amazon stated that it was satisfied with being able to keep the seized funds.

Finally, as noted above, SJT's had also demanded that Amazon pay damages of US$39,330.04, which is claims is based on 90 days of its gross profit. *See* Claimant's Arbitration Br. at 21. However, this claim for damages it not based on Amazon's seizure of the funds in SJT's account. Instead, this claim for damages is based on the allegation that Amazon was wrong to terminate SJT's Amazon account and selling privileges. The claim for damages is rejected because the Tribunal has found that Amazon was well within it rights to immediately terminate SJT's account after its internal investigation had concluded that SJT committed fraud in connection with the FBA Liquidation program. In short, the Tribunal has found against SJT on the alleged breach of the BSA which is the predicate for its claim for damages. Accordingly, this request for damages is denied.

### C. Claimant's Remaining Claims Fail in Light of The Finding That Clamant Fraudulently Abused the FBA Liquidation Program

SJT also has asserted claims against Amazon for conversion, violation of bailment, and unjust enrichment based on Amazon's refusal to return the funds. The Tribunal funds that all of these claims fail because they are based on the false premise that Amazon has wrongfully retained funds that belonged to SJT. For the reasons set forth above, the Tribunal had found that Amazon is not required to return any of the seized funds and is entitled to retain these funds to partially compensate Amazon for its actual damages. Because Amazon is entitled to retain these funds, Claimant has failed to carry its burden of proof with respect to it claims for conversion, violation of bailment, and unjust enrichment.

SJT also alleges that Amazon's actions in terminating SJT's seller account without advance notice and its seizure of the funds violated the WCPA. To prevail on a WCPA claim, SJT "must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or

commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37 (2009). The WCPA test is conjunctive and failure to prove one element will defeat the claim. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (1986).

SJT's WCPA claim fails because it has failed to allege an unfair or deceptive act. Each of the challenged actions taken by Amazon were expressly allowed by the terms of the BSA. Claims under the WCPA are precluded when a company's contract terms expressly disclose and permit the conduct that forms the basis for an opposing party's WCPA claim. *See Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 119 (2001) (finding no "deceptive act … because the car rental companies disclosed the concession fee to the consumers"); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1186, 1188-89 (W.D. Wash. 2008) (dismissing WCPA claim because Verizon's contract permitted the alleged deceptive act, explaining "any reasonable consumer reading the Agreement would realize that Verizon reserved the right to assess surcharges"); *Lowden v. T-Mobile USA, Inc.*, 2009 WL 537787, at *6 (W.D. Wash. Feb. 18, 2019), *aff'd*, 378 Fed. Appx. 693 (9th Cir. 2010) (dismissing CPA claim because plaintiff's contract "adequately disclosed" and permitted the alleged deceptive practices).

In addition, while this Tribunal, as well as a number of other arbitrators in similar cases, has found that Section 2 does not qualify as a liquidated damages clause, Amazon has submitted into evidence decisions from a number of other arbitrators upholding Section 2 as a valid liquidation clause. In light of this clear split in authority, the Tribunal does not find Amazon's exercise of its rights under Section 2 to be a deceptive or unfair practice.

Accordingly, Claimant has filed to carry its burden of proof with respect to its claim under the WCPA.

**D. Amazon's Counterclaims**

Amazon asserts three counterclaims. Amazon asserts a claim against SJT: (i) for breach of contract alleging that SJT committed fraud in connection its submission of products under the FBA Liquidation program; (ii) for breach of the WCPA alleging that SJT has engaged in unfair and deceptive acts occurring in trade or commerce; and (iii) for intentional interference with economic relations.

First, the Tribunal, as discussed above, has found that SJT breached its contract by fraudulently abusing the FBA Liquidation program. Accordingly, Amazon has sustained its burden of proving its claim for breach of contract. The Tribunal has also ruled that Amazon is entitled to keep the funds it seized from SJT's account; not as liquidated damages, but as compensation for the actual damages sustained. The Tribunal recognizes that Amazon's total damages are about US$43,330 above the amount it seized from SJT's seller account. At the hearing, the Tribunal asked Amazon if it was seeking an award of damages above the amount that it had seized from SJT's seller account. Amazon stated that it was satisfied with being able to keep the seized funds. Amazon also did not seek any additional damages in its post hearing brief. This is understandable as any such award would, as a practical matter, be uncollectable because SJT is no longer an ongoing business.

Second, Amazon asserts a claim against SJT for breach of the WCPA. The Tribunal finds that Amazon has not sustained its burden of proving a violation of the WCPA. The predicate act relied upon by Amazon in support of its WCPA claim is SJT's abuse of the FBA Liquidation program. The Washington Supreme Court has held that "a breach of a

private contract affecting no one but the party to the contract is not an act or practice affecting the public interest" under the WCPA. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash. 2d 778, 790, 719 P.2d 531, 538 (1986); State *v. Kaiser*, 161 Wash. App. 705, 719, 254 P.3d 850, 858 (2011) ("The question is whether the conduct has the capacity to deceive a substantial portion of the public.") (quotation omitted). Accordingly, Amazon's claim under the WCPA is denied.

Third, Amazon asserts a claim against SJT for tortious interference with economic relations. To prove a claim for tortious interference a party must show: (1) the existence of a valid contractual relationship with a third-party; (2) that the defendant had knowledge of the relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectance; (4) that the defendant interfered for an improper purpose or used improper means; and (5) resulting damages. *See Commodore v. Univ. Mech. Contractors, Inc.,* 120 Wash.2d 120, 137, 839 P.2d 314 (1992).

Amazon has failed to sustain its burden proof. Amazon has failed to prove that SJT's actions caused injury to Amazon's contractual or business relationships with someone else. Amazon asserts that SJT's conduct "interfered with Amazon's relationship with its customers." Amazon's Arbitration Br. at 26. But it failed to prove any such interference with any customer. Accordingly, Amazon's claim for tortious interference is dismissed.

## VI. ATTORNEY'S FEES AND COSTS

The Parties have both requested reimbursement of all of the costs incurred in connection with this arbitration, including an award of attorney's fees. The Tribunal notes that SJT prevailed on its claim that Section 2 of the BSA is an unenforceable liquidated damages provision. This means that Amazon's seizure of the US$143,206.41 present in

SJT's North American seller account at the time of its termination was improper. Indeed, it was this seizure of funds that sparked this arbitration. However, Amazon has prevailed on its claim that SJT breached the BSA by committing fraud in connection with the FBA Liquidation program. Under these circumstances, the Tribunal finds that neither Party is entitled to an award of its arbitration costs and attorney's fees.

## VII. THE FINAL AWARD

Accordingly, for the reasons stated above, this Tribunal awards as follows:

1. All of SJT's claims relating to its seller account EU Merchant ID A9FKTSZNOIKT8 or the sale of products on Amazon.com in the United Kingdom are dismissed for lack of jurisdiction.

2. SJT's claim for a declaration that Amazon's seizure of the US$143,206.41 present in SJT's North American seller account at the time of its termination was improper is granted because Section 2 of the BSA is an invalid liquidation damages clause.

3. SJT's claim that Amazon breached the BSA when it terminated SJT's seller account is denied,

4. SJT's claim that Section 3 of the BSA is void because it is procedurally and substantively unconscionable is denied.

5. SJT's claim for damages is denied.

6. SJT's claim against Amazon for conversion is denied.

7. SJT's claim against Amazon for violation of bailment is denied.

8. SJT's claim against Amazon for unjust enrichment is denied.

9. SJT's a claim against Amazon for violation of the Washington Consumer Protection Act is denied.

10. SJT's request for reimbursement of its arbitration costs, including its attorney's fees, is denied.

11. Amazon's counterclaim that SJT breached the BSA by committing fraud in connection with SJT's submission of products for sale under the FBA Liquidation program is granted.

12. As the remedy for SJT's breach of the BSA, Amazon is allowed to keep as damages all of the funds it seized in SJT's seller account.

13. Amazon's claim against SJT for breach of the Washington Consumer Protection Act is denied.

14. Amazon's claim against SJT for intentional interference with economic relations is denied.

15. Amazon's requests recovery for its arbitration costs, including attorney's fees, is denied.

16. The Administrative fees of the International Centre for Dispute Resolution totaling US$8,450.00 are to be borne as incurred, and the compensation and expenses of the arbitrator totaling US$32,784.50 are to be borne as incurred.

17. This Award is in full settlement of all claims and counterclaims submitted in this arbitration and any claim or counterclaim not specifically referred to above is denied.

I hereby certify that for purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York, United States of America.

Dated: November 19, 2025

Steven H. Reisberg
Arbitrator

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD

I, Steven H. Reisberg, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

Dated: November 19, 2025

Steven H. Reisberg
Arbitrator

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD

On this 19th day of November 2025, before me personally came and appeared Steven H. Reisberg, to me known and known to me to be the individual described in and who executed the foregoing instrument, and he acknowledged to me that he executed the same.

EDNER LORS
Notary Public, State of Connecticut
My Commission Expires July 31, 2026

Notary Public